There are essentially two threshold issues that have to be addressed before we get to the merits on this case. And for its own reasons, the government never addressed the merits. So what I would like to do with leave of the court would be to address those threshold issues and then reserve perhaps five minutes of time to answer the merits. The first threshold issue is whether or not this court should decide whether the particular social group claimed by the petitioner in this case in fact qualifies as a social group or whether it should be remanded to the BIA for that determination. Now the agency decision in this case held that it was not a social group. And that was the decision of the board of the immigration judge, which the board of immigration appeals affirmed without opinion. This court's case law is clear, and it's not just Hernandez Montiel, but there are a long series of cases holding that whether or not the claimed group is a particular social group is a question of law to be reviewed de novo with appropriate deference. And we don't think that there's any deference to be given here, because the decision of the agency is clearly erroneous in that it relied on old law and did not even address it under an appropriate standard. It hasn't been exactly a stable target as to our definition. We've moved it around somewhat. You could even take a look at some of our cases and wonder why we didn't go and bank, because we not only changed an approach, we've changed an analysis. Now our law is also clear that we should let the board, as the group that has expertise and is responsible, to have a first crack at now looking at it. Do you think we should not do that in this case, even though we said generally we should? They had the first crack, Your Honor. They were – this issue was before them. The issue as presented to the board of immigration appeals is whether former prostitutes in Vietnam can be a particular social group. That's true in every case that comes to us. The board always has had a crack at it. But we're asking something different of them. Now we're asking to relook in light of our Ninth Circuit cases what the standard should be. Should we not do that? That Ninth Circuit case was out at the time of the decision of the immigration judge. So it's not as though it was intervening law. The agency decision here was made prior – or excuse me – after that decision came out. Now whether they should be given a second chance, say, well, gee, we kind of blew it, we should have looked at it differently, that would not be consistent with any precedent that I know of from this Court. This Court has always determined that the particular social group is to be determined de novo. Well, counsel didn't cite a case, Montiel, either to the I.J. or to the Hernandez-Montiel or to the BIA. That's correct. He cited board precedent. But there are cases from this Court that precede that that did find that a former status could be. I understand that. But in answering Judge Wallace's question about whether this is something that the board should take first crack at, you were saying, well, they should have known. And, okay, so dealing now with sort of that narrow issue, whether they should have known, and I'm pointing out that counsel for petitioner didn't point it out to the board, didn't – so how can we blame the board for not addressing it? It's one thing if they say, look, there's a case from the Court of Appeals where this is something that the board should take into account. That's petitioner's responsibility. And then if the board doesn't address it, then we can say, okay, they didn't address it, they didn't exercise their expertise, we have no choice but to do it. But in light of Ventura, don't you have to pretty much let them take a first crack at it? I believe that they did take first crack. I think that they did take first crack, that the cases that were cited to them were cases from the board, Acosta, Fuentes, et cetera, and that the fact that the immigration judge was wrong because he cited something else is not – I.J. also said that even if this were a social group, there was no persecution. Past persecution. The I.J. did not reach the issue of future persecution. What was the evidence of future persecution? That they had told her that if she overstayed her allotted time or if she returned, she would be put in a re-education camp. I thought what the evidence showed is that she was told that if she practices that there is no prostitution in Vietnam and that if she tries to practice a trade there, she would be punished. No, sir. I don't know whether he testified to it. No, sir. I think that's what the immigration judge understood it to be. But that was not her testimony. She very specifically testified that she had been told that if she either overstayed her allotted time or returned, she would be sent to a re-education camp. Well, I.J. is the final fact. Are you disputing that? I am. I mean, the facts are – I am. I'm saying that there's absolutely no evidence on which he could have based a factual finding to the effect that it was if she practiced her profession in Vietnam. I think that. And what would happen to her if she did? If she did practice it? No, if she did return. If she returned, she believed she would be sent to a re-education camp, as her father had been. He spent four years in a re-education camp. And what do we know about the education camps to make us believe that they amount to persecution? The State Department report itself talks about the grave deprivations in the re-education camps, that women are frequently raped, and they're not given adequate food. I believe that you can go directly to that. You can also look at the fact that the American consul gave her documents to leave the country, even though he knew she had no right to come into the United States, telling her that she better not overstay the time that she had been allotted or she would be in trouble, basically. And those documents the government has lost or has refused to produce. And we believe that that is very relevant evidence that should have been produced so we would know exactly what the consul said. But he said something to convince the people to allow her to go on the plane, and then she had this sealed envelope to give to the immigration authorities in San Francisco, which we have never been able to get access to. So I think that there's a very strong inference there that the consul knew that she would be subject to persecution if she remained, and that he was going out on a limb to give her documents to allow her to return to the United States, even though she did not have status to enter. What is the status of account adjustment, the status petition? We are in the process of filing a mandamus to get the service to adjudicate it. She has been interviewed. They are declining to make a decision. They're saying they want to transfer it to Houston because that's now where she lives, but she filed it in New Orleans when she lived there. And if you transfer it to Houston, it will start all over again. It will be a several-year wait, and the service, I believe, is counting on that they can execute an exclusion order before it gets adjudicated if they transfer it to Houston. So we're filing a mandamus in New Orleans to force them to adjudicate it. If I may just reserve the rest of my time. Let's do a few seconds, okay? We'll hear from the government. Thank you. May it please the Court, James Grimes for the government. Your Honors, before addressing the government's argument that this case should be remanded to the Board in order to give the Board the chance to apply the correct legal standard, I'd like to briefly touch on the government's exhaustion jurisdiction argument. And I think what that comes down to is what this Court means by the phrase raised below. This Court doesn't have jurisdiction to address issues that were not raised below. I recognize that in her brief to the Board, Ms. Pham said that she was a member of a particular social group. She cited matter of Acosta. Why isn't that sufficient? Well, I think that's what the question is, Your Honor. If we said it was sufficient in Hernandez Montiel, we said it was sufficient in a host of other cases, the argument was presented and rejected. I don't understand the fact they have to cite all the cases as a proof of exhaustion. That seems to be your argument. Your Honor, it has to do with whether or not it's a – if it's enough for the alien to say, I'm a member of a particular social group and simply say that and say, I have a well-founded fear of future persecution, then she's exhausted her remedies. And I would agree with Your Honor. But if instead she has to say why there was an error and if she has to say, well, the Board, excuse me, the immigration judge applied the wrong standard, if she has to alert the agency to what she thinks the error is, then she has an exhaustion. Well, the IJ says that this isn't a recognizable social group. She appeals that. It seems to me it's pretty straightforward. And I understand Your Honor's position. I mean, how could the BIA not think it was in front of them? Well, I don't think the question is whether or not the BIA should have addressed it. That's a separate issue. That is a separate issue. This Court's jurisdiction is not controlled by what the BIA should or shouldn't have done. It's controlled by what she raised. And in this Court, if an alien wants to avoid or any petitioner or appellant wants to avoid waiver, that appellant has to argue an issue specifically and distinctly. But what do you make of cases like Lodhi where we said we don't hold aliens to that level of specificity? I mean, we said that specifically. We'd be contradicting ourselves if we said otherwise in this case, wouldn't we? I suppose that is one view that Your Honor could take. Our position is that she has to, just as she has to argue specifically and distinctly before this Court, she has to alert the agency to the error. She didn't alert the agency to the error. I understand. Let me make sure I understand the government's position on this. So you – I don't want to put words in your mouth. I'm just – Pardon me, Your Honor? I don't want to put words in your mouth. I'm just trying to make sure I understand your position. So if she had said exactly what she said in her petition, not a word different, but had added a citation to – I don't know why – Hernandez-Montiel. Right. Yeah, Hernandez-Montiel. Hernandez-Montiel. Let's say she'd said not a word more, not a word less, except that in addition to citing Acosta, she had cited – and whatever else she cited, which I don't remember, but I know she cited Acosta. She did. If she had then said see also or see most especially or just put a semicolon at the end of the cite and added Montiel, would that have been exhaustion? I think she would have had to say the immigration judge applied the wrong standard. Well, here's what she says is that she has been harmed in the past on account of her – this is her brief to the BIA. Yes, Your Honor. On account of her membership in a particular social group, specifically a Vietnamese female crime victim who is known to be involved in sexual activity, such class of Vietnamese females is marked by local authorities in a matter like the Scarlet Letter. The determination of a membership in a particular social group must be made on a case-by-case basis. The phrase membership in a particular social group has been interpreted to refer to a common immutable characteristic in which a person either cannot change or should not be required to change, which is the language of Montiel, et cetera. And I guess what you're saying is all she had to do was say the IJ erred in determining otherwise, and that's exhaustion, and this isn't – what was she saying here, if I remember? What I'm saying is that she did not say the immigration judge applied the wrong standard. I'm sorry. You let your voice drop. She did not say that the immigration judge applied the wrong standard. But in any event – She cited the what? She did not say that the immigration judge applied the wrong standard. She did not say that there has been an intervening change in circuit law in Hernandez-Montiel. Well, you know, it's troublesome to me, your argument, because as I understand it, the immigration judge had Sanchez-Trujillo before the immigration judge, right? That's right. All that the Petitioner didn't do is cite Hernandez. But Hernandez is a panel opinion. It is not an embankment opinion. Sanchez-Trujillo is the law of the Ninth Circuit by the way we approach. It is the law until it's overruled by an embankment court. Another panel doesn't have a right to overrule it. So what is – how can we say that the law of the circuit wasn't given? Well, I suppose if – Sanchez-Trujillo. Of course, that puts us in a different position remanding it back for Hernandez. Yes, Your Honor. But from the purpose of this argument, why hasn't she cited the law of the circuit? Well, if that's the case, Your Honor, then I suppose this Court would have to clarify you have one – a later decision that holds different than a previous decision. Yes. I'm as mystified as you are as I read Hernandez, because it sounds different to me from Sanchez. But that's our court problem. We didn't take it in bank. But be that as it may, the I.J. has before the I.J. what is the law of the circuit in Sanchez-Trujillo. I don't know why that wouldn't be sufficient. Your Honor, if that were the case, then I suppose that she's made the wrong argument before this Court that Hernandez doesn't bind – doesn't bind the agency at all. But that gets us – it's terrible, because then we don't refer it back because they already had Sanchez-Trujillo. I understand the problem. That may be the case. In any event – I think the broader context, though, is if you're going to argue – I mean, this is a more specific raising of an issue than I see in most cases. And basically what you're saying is, A, that you didn't cite the authority, even though you cited the language, quoted the language, almost verbatim from it. And, two, you didn't say that the I.J. erred, but then at the end, there it is. The immigration judge abused the discretion. Your Honor, I mean, to take Judge Wallace's point, if that's the case, then she's making the wrong law, because Acosta wasn't the law of the circuit. And that's not our position, and our position isn't that the I.J. shouldn't follow Hernandez. But in any event, my time is limited, and I'd like to address the remand issue if I could. Would you agree that the BIA didn't follow the regulations in this case? I'm not sure. Streamlining regulations. I mean, streamlining regulations saying that the relief is only appropriate when – summary of affirmance is only appropriate when the issues on appeal are squarely controlled by existing board or federal court precedent. And this wasn't, was it? This is – I think the remedy for when the BIA should not have streamlined an issue is to send the case back to the board. Right. And you think we have jurisdiction here. Yes. That's what I'm addressing. I mean, it seems to me that the streamlining regulations were violated in this case because this was a novel question before the BIA. So the most direct path to the relief you seem to be seeking is to say that BIA violated the streamlining regulations and should have taken it up. I think my answer to that is whether or not the BIA properly applied the Well, no, not necessarily. Let me explain why. I don't think we can – I don't think we can necessarily get to the remand issue, by the way. Ventura, as you've urged, because Ventura's talking about some applying facts to the law in a certain context. What Montiel, Hernandez-Montiel, says is that if this is an issue of law, we can determine it in the first instance. And if you follow Hernandez-Montiel, which seems to be the most analogous case here, and what we ought to do, we take the issue and decide it is a matter of law first, and then remand it to the BIA to apply it to the facts. What I'm suggesting to you, if we want to get to the relief that you seek, we have to say that the board violated the streamlining regulations, and this was a novel question, and we're remanding it. I don't know that I agree. I think that in order to address what I agree is a legal question of whether or not former forced prostitutes are an actual group, this court – that question is bound up in the factual questions of whether or not they're persecuted, whether she's a member of that group, whether she has an objective fear of persecution, and whether she's a likelihood of future persecution. Those are factual issues. How does that differ from what we did on Hernandez-Montiel? Well, I think the distinguishing factor between Hernandez-Montiel and this case is that that decision was issued prior to Ventura. And Ventura says that – well, Ventura, and I think it relies on Idaho power, in which the court said that once the error is laid bare, the court of appeals job is done. The case must then go back to the agency. Well, depending on whether it's an error of law or the application of law to the facts, if it's a pure question of law, then Montiel seems to say we take that up on our own, or we can. The government disagrees. I mean, this question is bound up in those factual questions that I pointed to. And the immigration judge said that he did not think that what it occurred to her was persecution. He said that he thought that was harassment, and she is not asserting past persecution. As she said this morning on page 33 of her brief. So remand will enable the agency to address in the first instance those factual questions which directly bear on that legal question. And that's especially important in this case where you have her testimony, somewhat shifting testimony on the one hand about the possibility of future persecution. On the other hand, you have the country report evidence that we cite in our brief at pages 6 through 9, which we think strongly undercuts her view of the possibility of future persecution. Let me ask you this. My time has expired. Yes, I know. But why are we resisting a remand under the streamlining? Because it gets you to the relief you want. Is it because you're afraid that we're going to exercise jurisdiction over the streamlining decision? Well, I think this Court has said in Carice that discretionary decision is out of bounds. But if it's a statutory, it's a violation of the regulations, which I think you have to concede it is, then we can remand it, which it seems to me is a useful tool to allow the BIA to do what you suggest. Your Honor, if I remember correctly, at pages 848, 854, and 855 of Carice, the Court said that even in the broader context outside of discretionary decisions, it's duplicative and superfluous for this Court to do that. No, it said it often turns into the merits, which is often true. This is not a case where the decision falls into the merits of the decision, I don't think. I think we disagree because the legal question is so bound up in the factual question of whether or not she is a member of a particular, excuse me, whether or not she was persecuted and whether she's a member of that group that she alleges. And since the record is set, why is the BIA in any better position than we are to make that determination? Because of the factual questions that are involved. I know, but the facts are set, aren't they? I'm sorry, Your Honor? The facts are established in this case by the record, right? The agency hasn't addressed the factual questions under the correct standard. Thank you, Your Honor. In any event, we ask that this Court remand this case to the Board. Thank you. Please, the Court. No, I have a petition in front of me to the BIA, and there are two issues raised, the second issue being the immigration judge erred in finding a respondent had not been persecuted on account of her membership in a particular social group. So it looks to me like what Petitioner brought before the Board was only the past persecution issue. Of course, past persecution only matters as a predictor of future persecution, but she does not seem to raise an independent claim of future persecution. It's on page 11 of the, of the, I guess it's administrative record. Yeah. I know you had something else in your mind when you stood up, but I thought I'd let you. Yeah, well, I did want to. You want to say whatever else you. Yes, very quickly. Think about this issue. She did raise that issue in her brief. She did say that on at least two occasions, and I believe I quoted that in my brief, where she said that. In her brief where? In her brief to the BIA. Isn't the petition jurisdictional? I mean, it's like a notice of appeal. It sets the issues. No, sir. The notice of appeal is not jurisdictional in the sense of defining the issues. It's only jurisdictional in the sense of it being timely filed. But in terms of the issues, in a great many cases, as in this case, the attorney who represented the person below is not the attorney who's doing the briefing. And until you get the transcript of the record, you really aren't going to be in a position to know what the, all of the issues are. Is there some law that we've established that if you get a second lawyer, you get excused from raising the issues properly? No. This is not an excuse from raising the issues properly because there is no case law that I know of, and it is also not the practice of the board to limit you to the issues stated in the notice of appeal. And the case you have for that proposition is what? Well, I'm saying there is no case one way or the other, but I know it is the practice because I've been doing this for 25 years, and I have never had anyone complain that the issues were not properly stated in the notice of appeal if they were raised in the brief. There has been ---- And where is the brief? It's not in the administrative record. The brief is in the record, Your Honor. Maybe it's somewhere back here. It's at pages ---- let's see. If you look at pages 9 through 12 is her brief to the ---- Well, that's the one I'm looking at. To the BIA. That's what I'm looking at. And if you look on page 11, you have a listing of the issues. And issue B only looks to pass persecution. Now, she does take it up on the next page on the first full paragraph, but again, it seems to only be connected to past persecution. She's saying they didn't find future persecution because they were wrong in not finding future persecution because they were wrong, I'm sorry, the immigration judge was wrong in failing to find future persecution based on erroneous finding of non-lack of past persecution. So once again, given that the I.J. made this determination and that to me it looks like what happened to her while she was in NAM was quite a bit less bad than many of our cases. She wasn't jailed. She wasn't beaten. Many of our cases say that even being jailed and beaten once or twice isn't ---- I'm just stating what the law is in our circuit. She comes nowhere near that kind of past conduct. Why isn't that an independent basis for affirming the I.J.'s decision that we don't have to get into this whole Monty ---- Well, that's part of the question of the administrative exhaustion. And I would also cite in that context Cruz-Navarro, because the issue may have been argued in a slightly different manner below and still be preserved for appeal. And I think we have that instance here. It was argued in a slightly different manner, but it was sufficiently raised for the BIA. I understand your position. I don't want to cut you off. Okay. I mostly wanted to make sure that I had all of the things in the record, you know, the briefs and so on. And you've pointed me to what you have. Okay. You did when you stood up had a point to make, and I don't want to take away your chance to do that. So you had a minute or more left. Okay. Thank you. But you still have a minute or more left. Yes, sir. The primary thing that I wanted to do is to say that if the court does remand without addressing the social group, we would beg the court to maintain jurisdiction over the case. She's been forced to hire three attorneys already, four if you count the original attorney, and to file another $250 filing fee is going to, you know, things are getting difficult for her. On the other hand, it keeps the ball up in the air and maybe lets the other process go forward. You know, can you answer just a question of my mind? If we do address Hernandez-Montiel and we do think about applying it to your client, I'm not exactly sure where the limit would be because anything you've done or has happened to you in the past becomes immutable because you can't go back and change the past. So you could have a group of convicted felons, of escaped fraud artists, a group of, you know. And, of course, nobody likes to be dealing with sort of the group of people who've escaped from prison and committed violence, for example. That could be a group, you know, if it's something that you've done in your past. And I'm not trying to be flirty. I understand that. So one thing, I'm not trying to put your client in the category of those people. I'm just saying, you know, the ones I suggest. I'm just saying the rationale of saying anything I've done in the past now defines me as it becomes an immutable characteristic. For the future, just question is having no bounds and could include certain kinds of groups which one could rationally say, look, I don't want to live next door to those people because, you know, the child molesters. There are two responses to that, Judge. First of all, you can look to Second Circuit law, and I believe it's also the UNHCR, and to a lesser extent the board is heading in that direction in terms of the external perception of the group, how the group is perceived, and then relate that to the ‑‑ it would be sort of a balancing issue. I mean, using your ex‑cons and how people perceive ex‑cons, I think that there is a very rational response to saying, I don't particularly want to live next door to an ex‑con. Let me give you an analogy just to mull over, and I realize we're going over time, but if we're going to deal with this issue, I think we need to. We have in California, you live in California? No, sir, I live in Texas. Well, it's probably true. I've lived here before, though, and it's good to be back. Well, we have this phenomenon where we have a law, I believe, if I read the papers, where if you're a child molester and you get released from prison, you get reported to the authority, you have to sort of report in, and sometimes they publish your name, and it's made public, it's on the Internet and all that. Yes, we have the same in Texas. And, you know, it's a terrible problem. People who have paid the debt to society, and yet society doesn't, you know, people don't want to live next door. And if we're sort of being here, the BIA of Vietnam is sort of looking at California, let's say, we say, look at this, persecution, you know, people get released from prison, they are from the group, white group, the group identified by law as former child molesters or convicted child molesters, and here they are being persecuted. I mean, if you sort of – Harassed. If you were to sort of turn it around. And I'm just sort of wondering, I mean, there are certainly reasons why governments might say, look, we are going to take your poor, your tired, your huddled masses, but we're not going to take, you know, we have an animus against certain groups. That's perhaps where the difference between harassment and persecution comes in, Judge. I would say perhaps that we harass ex-sex offenders, but I don't think we persecute them. We do not give society the right to beat them extensively, throw them back in jail simply on the grounds that they are past sex offenders. Do you think it comes down to not necessarily a definition of a social group, but on the other prongs of the analysis, persecution and on account? Correct. And I think that one might make that argument, depending on, And I think ex-sex offenders is perhaps a fairly good analogy, because they are viewed quite askance by society. And I think one might say that they are a social group. And if there were a group going around killing people because they were ex-sex offenders – There are certainly many sex offenders, maybe all. I don't know enough about the subject, but I'm motivated by urges and drives and needs that fortunately most of us don't have. And so you could say it's an immutable characteristic. So in some ways it's a more immutable characteristic than your client, because it's not just past conduct, it's – That's correct. But deciding that there is a social group does not end the question, because you also, as your colleague said, you also have to reach the question, first of all, of whether it is persecution versus harassment or prosecution. And secondly, you have to go into discretionary elements. And I think in a situation such as here, if you talk about past prostitutes, former prostitutes, a valid discretionary element would be did you engage in it voluntarily or were you forced into it as here. Because I think that if you look at the reaction she had in Vietnam, it was not because she was an involuntary prostitute that she was being harassed. It was because she had been a prostitute. And the question of, okay, so we don't like former prostitutes, is something that, but you have a person here who didn't choose to be that. So the – and that's not relevant perhaps to the persecutor, but it's certainly relevant in deciding whether or not she merits asylum. So I think that the concerns the Court's raising are valid concerns, but I think they would be better addressed by other prongs of the test for asylum. Okay. Thank you very much. I think I understand your analysis, and I appreciate the help. KHSI, you will stand submitted. And we'll next hear argument in the next case on calendar, Maduka v. Sunrise Hospital.
judges: Wallace, Kozinski, Thomas